NELSON F. GRISWOLD *vs.* JAMES C. EDSON.

November 29, 1884.

**Evidence—Conversation between Party and a Deceased Person.**—Gen. St. 1878, c. 73, § 8, makes any parties to an action or interested in the event thereof incompetent to testify to a conversation with, or admission of, any deceased or insane person, whether a party or not, relative to any matter at issue between the parties.

**Same—Objection held Sufficient.**—The court, having properly sustained a specific objection to evidence offered as incompetent, may, without the specific objection being restated, sustain an objection to an offer of what is substantially the same evidence.

Action upon a promissory note, brought in the district court for McLeod county. The answer alleged that the note was given to plaintiff in part payment for a span of horses, and pleaded a counterclaim for damages arising from the breach of an alleged warranty of soundness. The reply denied the making of any warranty.

The action was tried before *Macdonald,* J., and a jury. The plaintiff having introduced the note in evidence and rested, the defendant was called as a witness in his own behalf, and testified to having purchased the horses from an agent of the plaintiff. Upon being examined by the counsel for plaintiff, the defendant testified that the warranty was made with this agent verbally and that the agent had since died. Upon plaintiff's objection, the defendant's testimony as to his conversations with the agent was excluded. Afterwards the following question (found at folio 69 of the paper-book) was put to defendant by his counsel: "What were they (the horses) represented to you to be?"—to which plaintiff objected, without specifying any grounds, and the court sustained the objection. The offer referred to in appellant's (defendant's) second point was contained in the following question: "Did he (the agent) know, at that time, (time of the sale,) the purpose for which you (defendant) purchased these horses?" which was excluded.

Plaintiff had a verdict for the full amount of the note, and defendant appeals from an order refusing a new trial.

*Peck & Little*, for appellant.

*Cross, Hicks & Carleton*, for respondent.

GILFILLAN, C. J. The appellant's first point makes necessary a construction of Gen. St. 1878, c. 73, § 8, which reads: "It shall not be competent for any party to an action, or interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a deceased or insane party or person, relative to any matter at issue between the parties."

Prior to 1861, a party could testify to any matter pertinent to the issue. In 1861 the statute was changed so as to exclude a party testifying in his own favor, when the other original party to the contract or cause of action was dead or insane. In 1866 it was again changed so as to admit a party to testify in his own favor, though the other party were dead or insane, if the transaction on the other side (*i. e.*, the side of the dead or insane party) was had by an agent "whose testimony is received." This last phrase was held in *Bigelow* v. *Ames*, 18 Minn. 471, (527,) to mean an agent whose testimony can be received or "is receivable." It was again changed in 1877 to read as it now stands in Gen. St. 1878. The purpose of these various changes is manifest. Prior to 1861, a party testifying in his own favor to a contract or transaction with the other party had the opportunity and the temptation to give an uncontradictable false account of it where the mouth of the other party was closed by death or insanity, so that his version could not be heard. The act of 1861 intended to take away the opportunity, but it went further than was necessary for that purpose; for the opportunity would not exist, notwithstanding the death or insanity of the opposite party, if the transaction to which the surviving or sane party offered to testify were had with an agent alive and sane, and who might be called to contradict him; and, yet even if such were the case, the act excluded him. To correct this the change in 1866 was made. The language in which that change was made left doubt and uncertainty as to the rule. Hence the change in 1877.

Appellant contends as to that act that it intends only to exclude a party from testifying to a conversation with or declaration of a party, the latter being dead or insane, and not of any other person, whether

an agent or not, and although dead or insane; that the words "or person" are superfluous, used in the same sense as the preceding word "party,"—merely tautological. In view of the clear purpose of the various changes in the law, beginning with 1861, we do not think so. The danger of allowing a party to testify where he may feel safe to testify falsely, from the fact that the other party to the conversation cannot be produced to contradict him, because dead or insane, is just as great where he offers to testify to conversations or admissions of one not a party to the action or cause of action as of a party. There was just as much reason for excluding a party's evidence as to a conversation with or admission of any other person who has died or become insane, as for excluding it as to a conversation with or admission of one a party. The only reason for excluding it in either case is the danger of perjury. That exists in one case as fully as in the other. We cannot reject the words "or person," or construe them as having any but their ordinary meaning.

The ruling at folio 69 of the paper-book was upon an attempt to evade the previous ruling upon a specific objection made by plaintiff. The court could properly overrule the attempt, even though the specific objection were not repeated. It had already decided the evidence offered to be incompetent.

The offer referred to in appellant's second point was of evidence which, if competent, was of a fact not material.

The letters of defendant, introduced by plaintiff, were all written a year or more after the sale for which the note sued on was given, and out of which the alleged counterclaim grew, and show an intention to pay the note, and make no pretence of any counterclaim. They were some evidence that none existed.

Order affirmed.